UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

WINDELL C. BLOUNT, et al.                                          PLAINTIFFS

v.                                          CIVIL ACTION NO. 3:14cv336-DPJ-FKB

MISSISSIPPI DEPARTMENT OF                                          DEFENDANTS
HUMAN SERVICES, et al.

ORDER

This *pro se* civil-rights case is before the Court on Defendants Richard Berry, Linda

Slaughter, Walley Naylor, Ruth Ann Williams, Nelene Ledford, Faye Petersen, Sequoia Eubanks,

Andreal Harper, Vernassia Harbin, and Judy Price's ("Defendants") Motion for Judgment on the

Pleadings [52].[1]  For the reasons that follow, the Court finds that the motion should be granted.

I.       Facts and Procedural History

The four *pro se* Plaintiffs in this case, in general terms, complain about their treatment by

the Mississippi Department of Human Services and its employees with respect to child custody,

visitation, and child support matters.  They purport to state claims under 42 U.S.C. §§ 1983 and

1985 for violations of their First, Fourth, Fifth, Fourteenth, and Sixteenth Amendment rights.  On

January 5, 2015, the Court dismissed the claims against MDHS, including the official-capacity

claims against the named defendants, based on Eleventh Amendment immunity.  Order [43].  So

the only claims remaining are asserted against the individual defendants in their individual

capacities.

On February 11, 2015, Defendants filed their motion for judgment on the pleadings.

Plaintiff Windell C. Blount, apparently purporting to act on behalf of all four *pro se* Plaintiffs,

_____

[1]Defendant Petra Kay has separately filed a second Motion to Dismiss for Failure to
Effectuate Proper Service of Process [55], which will be addressed by separate order to follow.

filed a non-substantive response to the motion [56, 57], and the Court entered a show-cause order giving Plaintiffs "one additional opportunity to respond to the pending motion," and cautioning them that each Plaintiff should file on his or her behalf or file a joint pleading signed by all Plaintiffs.  Order [61].  Thereafter, Plaintiffs filed additional non-substantive responses [62, 63], which were signed by each Plaintiff.  Having reviewed the submissions and the applicable case law, the Court is prepared to rule.

II.     Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations and footnote omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

2

In this case, Plaintiffs are proceeding *pro se*. "It is well-established that 'pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.'" *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (citing *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981)). "However, regardless of whether the plaintiff is proceeding pro se or is represented by counsel, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Id.* (citing *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (additional citation omitted)).

III.   Analysis

A.    Claims of Plaintiffs James Evans and Wanda Kilgore

All of the allegations made by Plaintiffs James Evans and Wanda Kilgore are contained in paragraphs 30 through 33 of the Complaint:

> 30.  The Department of Human Services has suspended James Evans['s] Driver License without just cause and this is a direct violation of the First Amendment and the Fourteenth Amendment which has caused him a hardship in case of emergencies and have disruptive his ability to find a job with limited public transportation available so that he can pay child support.  The Agency is placing undue stress on Mr. Evans.

> 31.  The Department of Human Services has committed fraud by never serving James M. Evans a Notice of Summons through Notice of Service and the Agency's actions have allegedly increased Mr. Evans arrears to arrest him. (Exhibit "U" is in the hands of the Defendant).  This is a violation of the First, Fourth, Fifth, Fourteenth, and Sixteenth Amendments et.als.

> 32.  Wanda Kilgore's Driving License has been suspended for no good cause and has made it extremely difficult for her to make it to work, creating a hardship. (Exhibit "V" is in the hands of the Defendant).  This is a violation of the First, Fourth, Fifth, Fourteenth, and Sixteenth Amendments et.als.

> 33.  Wanda Kilgore was wrongfully incarcerated in 2004 and 2009 for

nonpayment of Child Support.  Exhibit "W[.]"

Compl. [1] ¶¶ 30–33.  All of these allegations concern alleged misconduct by MDHS, which has already been dismissed from this case.  There is no factual allegation that any individual defendant was personally involved in the alleged violations of Evans's or Kilgore's constitutional rights.  A § 1983 "plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation."  *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008).  Because neither Evans nor Kilgore has alleged that any remaining defendant was personally involved in the alleged suspensions of their driver's licenses, their claims are dismissed.

B.      Claims of Windell Blount and Christopher Kelly-Patton

1.      Claims Against MDHS

A number of Blount's and Kelly-Patton's allegations similarly fail to include a factual connection to any individual defendant.  *See* Compl. [1] ¶¶ 7–8, 12, 14–16, 22, 25–28.  For the same reasons justifying dismissal of Evans's and Kilgore's claims, the claims arising out of these allegations against MDHS are also dismissed.

2.      Fifth Amendment Claims

Plaintiffs allege that Defendants violated their Fifth Amendment rights.  "The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor."  *Jones v. City of Jackson*, 203 F. 3d 875, 880 (5th Cir. 2000).  Plaintiffs do not allege that any of the defendants were acting under the authority of the federal government.  The Fifth Amendment claims therefore fail.

4

###### 3.      Sixteenth Amendment Claims

Plaintiffs also assert violations of their rights under the Sixteenth Amendment.  The Sixteenth Amendment permits Congress "to lay and collect taxes on income."  U.S. Const. amend. XVI.  Plaintiffs' allegations bear no connection to this provision, so the Sixteenth Amendment claims are dismissed.

###### 4.      Time-Barred Claims

"[Section] 1983 claims [are] subject to the Mississippi statute of limitations for general personal injury actions," which "requires plaintiffs to file an action within three years of [a claim's] date of accrual."  *Walker v. Epps*, 550 F.3d 407, 415 (5th Cir. 2008).  Plaintiffs filed this lawsuit on April 21, 2014, so any claims accruing before April 21, 2011, are time-barred. Plaintiff Blount's allegations concerning incidents that took place in June 2010 fall into this category and are therefore dismissed.  *See* Compl. [1] ¶¶ 1–3.

###### 5.      Remaining Claims

Having disposed of the claims discussed above, and liberally construing the Complaint, the Court identifies the following remaining claims against Defendants:  (1) a claim related to "Family Master" Faye Peterson's order directing Blount to pay child support and denying him visitation, Compl. [1] ¶ 5; (2) a claim that Ruth Ann Williams and Nelene Ledford interfered with Blount's access to visitation with his son, *id.* ¶ 13; (3) claims related to Judy Price's handling of Kelly-Patton's child-support payments, *id.* ¶¶ 17–19, 21, 24, 29; (4) a claim that Walley Naylor threatened to suspend Blount's driver's license, *id.* ¶ 6; (5) a claim related generally to Naylor's fitness for employment with the State, *id.* ¶¶ 9–11; and (6) a claim related to Richard Berry's alleged refusal to "assist[] plaintiffs . . . with answers to issues alleged in this

complaint," *id.* ¶ 2.  Defendants assert, among other arguments, that they are entitled to qualified

immunity on these claims.

"Qualified immunity shields government officials from civil damages liability unless the

official violated a statutory or constitutional right that was clearly established at the time of the

challenged conduct."  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).  "When a defendant

invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of

the defense."  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per

curiam).

> Because qualified immunity constitutes an immunity from suit rather than a mere
> defense to liability, the defense is intended to give government officials a right not
> merely to avoid standing trial, but also to avoid the burdens of such pretrial
> matters as discovery . . . as [i]nquiries of this kind can be peculiarly disruptive of
> effective government.  Thus, adjudication of qualified immunity claims should
> occur at the earliest possible stage in litigation.

*Id.* (alterations in original) (emphasis deleted) (citations and internal quotation marks omitted).

"If qualified immunity is raised in a motion to dismiss, 'it is the defendant's conduct as alleged in

the complaint that is scrutinized for "objective legal reasonableness."'"  *Senu-Oke v. Jackson*

*State Univ.*, 283 F. App'x 236, 239 (5th Cir. 2008) (per curiam) (quoting *Behrens v. Pelletier*,

516 U.S. 299, 309 (1996)).

To determine if an individual is entitled to qualified immunity, the court applies a two-

step analysis.  "First, [the court] ask[s] whether, considered in the light most favorable to the

plaintiff, the plaintiff has alleged facts that, if proven, would establish that the official violated

the plaintiff's constitutional rights."  *Id.* at 238 (citing *Saucier v. Katz*, 533 U.S. 194, 201

(2001)).  "If the defendant's conduct did not violate [the] plaintiff's constitutional rights under the

first prong, . . . he is entitled to qualified immunity." *Blackwell v. Laque*, No. 07–30184, 2008

WL 1848119, at *2 (5th Cir. Apr. 24, 2008) (per curiam).  The second prong requires the court to

consider

> whether the defendant's actions were objectively unreasonable in light of clearly
> established law at the time of the conduct in question. To make this determination,
> the court applies an objective standard based on the viewpoint of a reasonable
> official in light of the information then available to the defendant and the law that
> was clearly established at the time of the defendant's actions.

*Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citation omitted).  "It is important to

emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as

a broad general proposition.'"  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)

(citing *Saucier*, 533 U.S. at 201). Thus:

> The contours of the right must be sufficiently clear that a reasonable official
> would understand that what he is doing violates that right.  The relevant,
> dispositive inquiry in determining whether a right is clearly established is whether
> it would be clear to a reasonable officer that his conduct was unlawful in the
> situation he confronted.

*Id.* at 199 (citation and internal quotation marks omitted).

Until recently, district courts were required to address these prongs in order, first

determining whether a constitutional violation occurred.  *Saucier*, 533 U.S. at 201.  That

mechanical approach was overruled in *Pearson v. Callahan*, freeing district courts to address the

"clearly established" prong of the qualified immunity test before deciding whether a

constitutional violation had occurred. 555 U.S. 223, 236 (2009).

a.      Peterson Claim

Blount's allegation against Peterson states as follows:

On October 11, 2012, on behalf of the Mississippi Department of Human

Services, Judge Faye Peterson allegedly committed fraud by hearing Windell Blount [sic] case and directing him to pay Child Support.  The appointed Family Master, Ms. Peterson was fully aware of the fact that Mr. Blount was a Certified Police Officer with Canton Reserve Unit, getting no pay and was a full time college student and Judge Faye Peterson is not an elected Chancery Judge.  Judge William Singletary signed off on the order but he was not present during the hearing.  Faye Peterson, appointed Family Master, denied Mr. Blount visitation but in the same Court rendering visitation for other non custodial male parents that had equal or even more issues with custodial parents than Mr. Blount.  The Family Master actions has lead [sic] to severe emotional scarring of his minor son, additionally, causing undue stress to him as a Father and has continued to prevent a positive upstanding role model from raising his young son.  This is in violation of the Fourth, Fifth, Fourteenth, and Sixteenth Amendment of the Constitution, et.al.

Compl. [1] ¶ 5.  Peterson argues that, to the extent this paragraph states a claim of some violation of Blount's constitutional rights, she is shielded from liability by judicial immunity.  She is correct.

"A judge generally has absolute immunity from suits for damages."  *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 221 (5th Cir. 2009).  Exceptions exist only for "nonjudicial actions" and actions "taken in the complete absence of all jurisdiction."  *Id.* (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991)).  And a court-appointed official "whose acts are functionally equivalent to that of a judge," enjoys derivative judicial immunity.  *Boston v. Lafayette Cnty., Miss.*, 744 F. Supp. 746, 750 (N.D. Miss. 1990) (discussing immunity afforded to court-appointed special master); *see Davis v. Bayless*, 70 F.3d 367, 374 (5th Cir. 1995) (explaining that court-appointed receiver had derivative immunity as to federal claims).  Based on the facts as alleged, the Court concludes that Peterson has derivative judicial immunity from Blount's claim.

b.      Visitation Claim

Blount asserts that Williams and Ledford interfered with his visitation rights:

> In October 2012, Windell Blount met twice with Department of Human Services'
> Ruth Ann Williams and Miss Ledford and was promised visitation with his minor
> son.  The Federally Funded Program that Ruth Ann Williams managed, along
> with Walley Naylor, discriminated against [Blount] and denied him visitation due
> to the Federal Complaint that he had filed against the then Director of Child
> Support Services through the Federal Bureau of Investigation's Jackson Office.
> (Exhibit "N" is in the hands of the Defendant).  This is a violation of the First,
> Fourth, Fifth, Fourteenth, and Sixteenth Amendments et.als.

Compl. [1] ¶ 13.  Defendants argue that, to the extent Blount's allegations state a facially

plausible claim for a violation of any of the enumerated amendments, Williams, Ledford, and

Naylor are entitled to qualified immunity on this claim.  Specifically, relying on a trio of Fifth

Circuit cases, Defendants argue that the contours of the substantive-due-process liberty interest in

the care and custody of one's children are not sufficiently particularized to constitute clearly

established law for purposes of qualified immunity.  *See* Defs.' Mem. [53] at 16–19 (citing *Kiser*

*v. Garrett*, 67 F.3d 1166 (5th Cir. 1995);  *Doe v. State*, 2 F.3d 1412 (5th Cir. 1993); *Hodorowski*

*v. Ray*, 844 F.2d 1210 (5th Cir. 1988)).  And while Defendants appear to be correct as to a

Fourteenth Amendment due-process claim, they do not address potential claims under the First

and Fourth Amendments.

As to the Fourth Amendment, there is no indication that Blount was subjected to a search

or seizure, so Blount fails to state a facially plausible claim for violation of that amendment.

*E.g.*, *Wernecke v. Garcia*, 591 F.3d 386, 393 (5th Cir. 2009) ("The Fourth Amendment protects

against unreasonable searches and seizures . . . .").  So the only remaining possibility is a First

Amendment retaliation claim.

For an ordinary citizen to establish a First Amendment retaliation claim against a government employee, he

> must show that (1) [he was] engaged in constitutionally protected activity, (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct.

*Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).  Read liberally, Blount alleges that he (1) filed a complaint, (2) was denied visitation to which he was otherwise entitled, and (3) that the denial was in retaliation for filing a complaint.  But he says it is the "Federally Funded Program" managed by Williams and Naylor that retaliated against him; there is no facially plausible factual averment that any particular defendant violated Blount's rights under the First Amendment.  And to the extent Blount seeks to hold Williams or Naylor vicariously liable for the alleged retaliation, vicarious liability is unavailable under § 1983.  *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).  The claim does not pass muster under *Iqbal* and *Twombly*.

That said, the Court is not convinced that Blount "has alleged his best case" on the First Amendment claim, so dismissal with prejudice is inappropriate.  *Amanduron v. Am. Airlines*, 416 F. App'x 421, 423 (5th Cir. 2011) (per curiam).  As such, the dismissal of the First Amendment claim will be without prejudice.

### c.  Child-Support-Payment Claim

Kelly-Patton's claim regarding the way his child-support payments were handled is laid out in several paragraphs of the Complaint:

> 17.  On December 19th, 2012, Judy Price sent to Christopher E. Kelly-Patton an Affidavit of Accounting that she knew was incorrect.  When asked why she sent an incorrect Affidavit of Accounting, she would only say, "I had to send it."

Exhibit "R[.]"  This is a violation of the First, Fourth, Fifth, Fourteenth, and Sixteenth Amendments et.als.

18.  According to the PEER Committee's Report 2009 done on the Child Support Enforcement Division, Affidavits of Accounting are supposed to send [sic] to Non-Custodial Parents at the end of the month.  Exhibit "S" 1 and 2.  This is a violation of the First, Fourth, Fifth, Fourteenth, and Sixteenth Amendments et.als.

19.  In November 2012, Christopher E. Kelly-Patton has [sic] sent to his ex-wife, Ruby Simmons, a check 1581 for $200.00 per their internal agreement.  Exhibit "T[.]"

. . .

21.  Ruby Simmons did not report to Judy Price, her Case Worker, that she had received funds from Christopher E[.] Kelly[-]Patton.

. . .

23.  Christopher E. Kelly-Patton received a letter from the Child Support Office on January 11, 2013, stating that the amount that is owed for back pay will be reported to the Credit Bureaus if the amount is not contested within fifteen days.

    a.  The letter was dated January 1, 2013, which was a holiday.

    b.  The letter was postmarked January 10, 2013.

    c.  The letter could not have been received until, at the earliest, January 11, 2013.

    d.  A derogatory account was listed on Christopher E. Kelly-Patton's credit file on January 1, 2013, with a past due balance of $71.00

This is a violation of the First, Fourth, Fifth, Fourteenth, and Sixteenth Amendments et.als.

24.  Christoper E. Kelly-Patton was due an adjustment of a $200.00 credit that should have been accounted for prior to January 1, 2013.

. . .

29.  When Christopher E. Kelly-Patton attempted to discuss the garnishing of his paycheck, Judy Price said that it was a Federal Law.  When he told her that he was

going to resist that option, she said, "You may call customer service and ask for
my supervisor and take up that issue with her."  Judy Price was aware that her
supervisor was off on some type of leave and was not in that day nor would she be
in the next day.  This is a violation of the First, Fourth, Fifth, Fourteenth, and
Sixteenth Amendments et.als.

Compl. [1] ¶¶ 17–19, 21, 23–24, 29.  For the reasons stated above, Kelly-Patton's allegations do

not state a claim for violation of the Fifth or Sixteenth Amendments.  And because he alleges

neither that he engaged in protected speech for which he was retaliated against nor that he was

subjected to a search or seizure, he fails to state a facially plausible claim for violation of his First

or Fourth Amendment rights.

So the question is whether the allegations state a facially plausible claim that his due-

process or equal-protection rights under the Fourteenth Amendment were violated, and whether

Price's actions were objectively unreasonable under clearly established law.  Plaintiffs do not

identify—and the Court has not found—any clearly established federal rights concerning the

crediting of payments to child-support accounts, the timing of mailing or contents of affidavits of

accounting, or the other allegations Kelly-Patton makes against Price.  As such, to the extent

Kelly-Patton has a Fourteenth Amendment claim against Price, she is entitled to qualified

immunity on the claim.

d.     Driver's-License Claim

Blount alleges that Walley Naylor "sent a threatening letter and made threatening calls

stating that Mr. Blount's Driving License will be surrendered on 4/15/2013 . . . .  The threatening

letters has caused Windell Blount fear of arrest."  Compl. [1] ¶ 6.  Blount does not assert which

constitutional provisions he claims Naylor's threats implicate.  Assuming he is again purporting

to travel under the First, Fourth, Fifth, Fourteenth, and Sixteenth Amendments, for the reasons

set forth above, the Fifth and Sixteenth Amendments do not apply.  And because the allegation

makes no mention of protected speech or an actual search or seizure, the First and Fourth

Amendments are likewise inapplicable.  Since he does not allege that he was treated differently

than someone similarly situated, that leaves only potential due-process claims under the

Fourteenth Amendment.

"There are three principal elements to any procedural-due-process claim:  the plaintiff

must demonstrate that a state actor (1) deprived him (2) of life, liberty, or property (3) without

due process of law."  *Woodard v. Andrus*, 649 F. Supp. 2d 496, 505 (W.D. La. 2009); *see also*

*Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  Similarly, "'[a] violation of substantive due

process . . . occurs only when the government deprives someone of liberty or property; or, to use

the current jargon, only when the government works a deprivation of a constitutionally protected

interest.'"  *Simi Inv. Co., Inc. v. Harris Cnty., Tex.*, 236 F.3d 240, 250 (5th Cir. 2000) (quoting

*Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)).  But Blount does not allege any

deprivation; instead, he says Naylor merely threatened to revoke Blount's driver's license.

Absent an actual deprivation, Blount fails to state a facially plausible due-process claim.

e.      Additional Naylor Claim

Plaintiffs make additional allegations about Naylor:

9.  Lind [sic] Slaughter, Regional Director on April 26, 2012 was made aware of
the activities of Walley R. Naylor, Director from the apology letter.  She did
nothing to report the harassment and fraud to her superiors, thus causing the
harassing phone calls to continue and threats of bodily harm to continue that
placed the client, Windell C. Blount in danger and fear of his life.  Exhibit "K".
This is a violation of the First, Fourth, Fifth, Fourteenth, and Sixteenth
Amendments etl.als.

10.  The Director of the Division of Field Operations, Walley Naylor, is allegedly

13

a Convicted Felon and is allegedly still on Probation.  Therefore, he should not
have served in a role where he would have unrestrained access to any monies
including Federal Funds.  See Exhibit "L", (1) State Statue [sic] say's [sic] it is
unlawful for a convicted felon to handle money.  (2) Mr. Naylor allegedly
transitioned from a position at the State Parole Board then to a state agency to
avoid being properly vetted through criminal background check (NCIC) and (3)
Mr. Naylor allegedly changed his first name from Wally to Walley to avoid being
detected because he allegedly was never fully pardoned but given just a release by
former Governor Kirk Fordice who is now deceased and allegedly no licensed
Attorney has ever expunged Mr. Naylor's criminal record because his inmate
information is still posted without a photo picture to allegedly conceal his identity
at CMCF and that once upon a time Mr. Naylor was housed there.  This is in
violation of the First, Fourth, Fifty [sic] Fourteenth, and Sixteenth Amendment of
the Constitution, et.al.

11.  Walley R. Naylor, as Director of the Division of Child Support Enforcement,
mailed a correspondence letter of apology to Windell C. Blount dated April 26,
2012, acknowledging that the agency had violated Mr. Blount [sic] rights.
(Reference Exhibit "K")  This is a violation of the First, Fourth, Fifth, Fourteenth,
and Sixteenth Amendments et.als.

Compl. [1] ¶¶ 9–11.  As an initial matter, Plaintiffs mis-characterize the letter attached to the

Complaint as Exhibit K.  While Naylor does "apologize for any inconvenience [his child support

case] may have caused [Blount]," the letter in no way "acknowledg[ed] that the agency had

violated" Blount's rights.  Compl. [1] Ex. K; *id.* ¶ 9.  Setting the mis-characterization of the letter

aside, neither Slaughter's alleged failure to report Naylor to her supervisors nor Naylor's alleged

criminal record and his transmission of a "letter of apology" violates any of Blount's clearly

established federal rights.  Slaughter and Naylor are entitled to qualified immunity on any claims

arising out of these allegations.

> f.      Berry Claim

Finally, Plaintiffs allege:

Mr. Richard Berry, Executive Director (DHS) on or about . . . April 17, 2014
failed to provide meaningful accommodations and equal protection under the law

14

> in addition to Due Process of the Law in assisting plaintiffs . . . with answers to
> issues alleged in this complaint.  This is a violation of the Fourth, Fifth,
> Fourteenth, and Sixteenth Amendments.

Compl. [1] ¶ 2.  Apparently, Plaintiffs were generally displeased with the way Berry handled their concerns about MDHS.  Plaintiffs fail to plead any facts that would support a finding that Berry violated any of their constitutional rights.  This claim is therefore dismissed.

IV.     Conclusion

The Court has considered all of the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, the Motion for Judgment on the Pleadings [52] is granted.  As Plaintiffs Evans and Kilgore assert no claims against any of the individual defendants, pursuant to the Court's previous Order [43], their sole claims were dismissed without prejudice.  Plaintiff Patton-Kelly's claims against the remaining defendants, and Plaintiff Blount's claims other than his First Amendment claim, are dismissed with prejudice.  Plaintiff Blount's First Amendment claim is dismissed without prejudice.

**SO ORDERED AND ADJUDGED** this the 5th day of June, 2015.

s/ *Daniel P. Jordan III*

UNITED STATES DISTRICT JUDGE